Joseph CRUSCO, Robert Oldenberg, Leo Marasa, Forest Huff, William Ruhs, John Marshall, Leroy Natt, Dom Bennedetto, George Moshinsky, Rocco Reale, John Alimo, Ed Brennan, Robert Booth, Larry Goetz, Joseph Wavercan, Paul Horodecki, Steve Glocovics, Lou Ciliberti, Sr., James Monroe, George Simatos, Milton Solomon, Joseph Corbett, Peter Corbett, Robert Chibatto, John Johnson, Bernard Scapparo, Mike McDonough, Dan Gray, Erskine Ingraham, William Lipinsky, John Rivas, James Southerland, Ed Diaz, Cornelius Johnson, Max Barnwell, Robert Corbett, Joe Gentile, Robert Smith, Mike Hynes, Loman Wilson, David Dixon, Dan Fox, Joe Mara, Mike McCue, Dan Scafuto, Jay Weitzel, Mike Gonzales and George Danielo, Plaintiffs,

v.

FISHER & BROTHER, INC. and Local 814, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, Defendants.

No. 78 Civ. 1149 (JMC).

United States District Court,
S. D. New York.

Aug. 3, 1978.

Eisner, Levy, Steel & Bellman P. C., New York City (Richard F. Bellman, Arthur N. Read, Eugene G. Eisner, New York City, of counsel), for plaintiffs.

Alan B. Pearl, Jericho, N. Y., for defendant Fisher & Brother, Inc.

Cohen, Weiss & Simon, New York City (Keith E. Secular, Susan H. Bitensky, New York City, of counsel), for defendant Local 814, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen & Helpers of America.

## OPINION

CANNELLA, District Judge:

Motions by plaintiffs, for a preliminary injunction and summary judgment, are denied.

Motion by defendant Fisher & Brother, Inc., to confirm the December 14, 1977 award of Arbitrator Thomas A. Knowlton, is granted.

Motion by defendant Local 814, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America, for summary judgment, is granted.

The complaint is dismissed.

## FACTS

This is a labor dispute. Defendant Fisher & Brother, Inc. ["Fisher"] is a moving and storage company with a place of business in New York City. Defendant Local 814, International Brotherhood of Teamsters, Chauffeurs, Warehousemen & Helpers of America ["Local 814" or "the union"] is party to a collective bargaining agreement with Fisher. Plaintiffs ["the 22nd Street men" or "the Weissberger men"] are employees of Fisher and members of Local 814. In their complaint, plaintiffs allege that Fisher violated the collective bargaining agreement and that Local 814 breached its duty of fair representation in connection with a seniority dispute. Jurisdiction is based on § 9(a) of the National Labor Relations Act, 29 U.S.C. § 159(a), § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, and on the Federal Arbitration Act, 9 U.S.C. § 10; see 28 U.S.C. §§ 1331, 1337.

The genesis of this lawsuit is a series of events that occurred between December 1972 and February 1973. In December 1972, the forty-eight individual plaintiffs were employees of Weissberger Moving & Storage Co., Inc. ["Weissberger"] and worked out of a garage on 22nd Street in

Manhattan. Local 814 was the bargaining agent for Weissberger's moving and storage employees and the union was party to a collective bargaining agreement with the company. In late December 1972 Weissberger advised its employees that it would cease doing business at the end of the year. Consequently, in January 1973, the moving and storage employees (including some of the plaintiffs in this suit) were laid off.

During this period defendant Fisher negotiated the purchase of certain Weissberger assets. At that time, Fisher maintained a warehouse on 52nd Street in Manhattan and employed approximately fifty moving and storage workers. The Fisher employees ["the 52nd Street men"] also were represented by Local 814, and the union was party to a collective bargaining agreement with Fisher. In its discussions with Weissberger, Fisher had expressed an interest in hiring some of the laid-off 22nd Street men. However, the question of how the 22nd Street men would be treated for purposes of seniority, in the event they were hired by Fisher, was left unresolved.

Local 814's collective bargaining agreements with Fisher and Weissberger were substantially identical. The agreements contained the following provision (Article 21–H of the current agreement) critical to plaintiffs' claims in this suit:

> Whenever one company is absorbed by, merged with, purchased or acquired in any manner by another company, the employees of both companies shall be integrated into one Seniority List by their dates of original employment. This shall be so even if there be more than one payroll or both companies retain their corporate structure, or are owned and operated as separate entities. The determining factor shall be common stockholders, directors or officers, or common ownership. This shall, likewise, apply to all companies heretofore merged, absorbed, purchased, or acquired and such companies now maintaining separate Seniority Lists or payrolls shall, within ten (10) days after the execution of this agreement, integrate their Seniority Lists to

accomplish the foregoing purposes. Any attempt to evade this purpose shall leave the Union free to withdraw its members from the employ of the company or companies practicing such evasion until this section is complied with. The parties recognize, however, that in the case of warehouses widely separated, or having different-type operations, hardships may be suffered or difficulties presented making administration of one Seniority List impractical. In such cases the Union shall meet with such companies separately to provide means of surmounting such difficulties to eliminate hardship.

The impact of this provision on the 1973 Fisher/Weissberger transaction was disputed. The 52nd Street men were opposed to a single seniority list based on original employment dates because the 22nd Street men had substantially greater seniority in the industry. The parties attempted to resolve this dispute at a January 15, 1973 meeting, held at the offices of Local 814, attended by representatives of the 22nd Street men, the 52nd Street men, the union and Fisher. At the conclusion of the meeting the representatives of the 52nd Street men and 22nd Street men (including plaintiffs Chibatto, Booth, Peter Corbett, Joseph Corbett and Marasa) signed identical letter agreements providing that:

> 1. There shall be two (2) separate lists operating under Fisher & Brother, Inc.
> 2. The work shall be distributed as fairly as possible between both Seniority Lists.
> 3. If either one of the lists is exhausted, before hiring from the street, management shall first go to the other list for additional help.
> 4. In order to protect as many list men as possible, it will take full cooperation from both parties, namely, "employees" and "the employer."

The following day Fisher and Local 814 entered into an agreement which read as follows:

> This will confirm our agreement to abide by the annexed formula, as approved by the committees for both groups of men.

It is agreed that if there is any dispute between the union and the company concerning the fair and equitable application of this agreement, it shall be subject to the grievance and arbitration provisions of the Collective Bargaining Agreement.

Pursuant to these agreements, Article 21–H notwithstanding, two separate seniority lists were created. One list contained the names of approximately fifty former Fisher employees and was known as the 52nd Street list; the other contained the names of approximately one hundred former Weissberger employees and was known as the 22nd Street list. On February 1, 1973, Fisher closed its deal with Weissberger. For a time, Fisher operated both garages and divided its work between the two seniority lists.

In 1974, however, Fisher consolidated its operations by closing its 52nd Street warehouse. Thereafter, Fisher moving and storage employees from both lists worked out of the 22nd Street warehouse. Following this consolidation, Fisher continued to assign work under the two-list system. Additionally, in April 1974, Fisher and Local 814 negotiated a new collective bargaining agreement which included a provision for the creation of a single seniority list identical to the provision quoted earlier. In June 1975 the Weissberger men submitted a grievance to the union seeking arbitration on the issue of the seniority lists, but the dispute was never arbitrated.

In 1977 Fisher and Local 814 entered into another collective bargaining agreement covering the period from April 1, 1977 to March 31, 1980. This current agreement contains language, concerning the creation of a single seniority list, identical to that in the earlier agreements. Fisher claims that, during the 1977 negotiations with Local 814, the company sought a contract provision specifically dealing with the two-list system it had been operating under since February 1973. At that time Fisher argued that the two lists were an "administrative nightmare" and placed the company at a disadvantage with its competitors. Fisher pointed out that, although the combined lists contain approximately one hundred names, the company's business had diminished to the point where it employed approximately fifty workers on a daily basis. Additionally, within each list, the employees are classified and assigned seniority in specific job titles (e. g., chauffeur, warehouseman, checker and helper). Thus, in attempting to divide the work, Fisher was required to keep detailed records of work performed on each list by job category. Moreover, Fisher claimed that there was disharmony whenever the 22nd Street men and the 52nd Street men were assigned to work together on a particular job, and that the situation occasionally required it to employ more men than the work demanded.

In any event, on July 12, 1977, Fisher advised its employees and Local 814 that the company intended to merge the seniority lists, by date of original employment, effective the following day. Local 814 protested this unilateral conduct by the employer, and, thereafter, Fisher agreed to maintain the *status quo* and to submit the matter to arbitration.

The arbitration hearing was held on October 21 and November 1, 1977, under the auspices of the American Arbitration Association before Thomas A. Knowlton as arbitrator. The transcript of the arbitration hearing is before the Court as an exhibit to the answer of defendant Fisher. Among those present on October 21 were the president of Local 814 and the union's lawyer, Bruce Simon, Esq.; representatives of both employee groups, including plaintiffs Joseph and Peter Corbett; an attorney representing Fisher; and a labor consultant.

At the beginning of the hearing, the parties presented the following issue to the arbitrator:

> [D]id the company violate the collective bargaining agreement in merging the lists of the employees that were originally Weissberger and Fisher [, and] . . . if so what shall be the remedy?

Following an opening statement by Fisher's representative, Mr. Simon outlined the arguments on behalf of the respective employee groups. As to the role of the union, Mr. Simon stated:

[T]he union's posture here today will not be to align itself on the merits with either the original Fisher or the original Weissberger men, but to assist the arbitrator and to assist the representatives of each of the groups of men in placing before you, the Arbitrator, all of the relevant facts, all of the background, all of the documents to assist each of the representative groups of employees in fashioning their arguments before you and their statements of position before you, to keep the employer on the straight and narrow in terms of presentation of its version of the facts and its arguments with respect to them.

The only witness on October 21 was Edward Kiernan, a Fisher vice-president. Mr. Kiernan spoke primarily on the administrative problems that the dual list system had caused the company. Following Kiernan's testimony, the arbitrator adjourned the hearing until November 1. On that day Les Cheiken, vice-president of Fisher, testified to the circumstances of the 1973 transaction between Fisher and Weissberger. Under questioning by Mr. Simon, Mr. Cheiken stated that Fisher acquired all of Weissberger's physical assets; that Fisher did not acquire any of Weissberger's accounts receivable nor assume any Weissberger indebtedness; that there was no exchange of stock between the two companies; that some, but not all, of the Weissberger office clericals were hired; that Fisher employed one of the former Weissberger managers; and that for a period of time there was a consultation agreement between Fisher and a former Weissberger principal. Thereafter, representatives of the respective employee groups, including plaintiffs Peter and Joseph Corbett, stated their positions with regard to the seniority dispute. At the conclusion of the hearing, Mr. Simon summarized the contentions of the two employee groups. He then offered those employees present the opportunity to contradict anything he had said or to add anything they wished. Each employee present stated on the record that he had nothing to add to Mr. Simon's comments.

On December 14, 1977, Arbitrator Knowlton issued an opinion and award. The award provides:

1. The Employer did violate the Collective Bargaining Agreement in merging the lists of employees which were formerly Weissberger and Fisher.

2. (a) As a remedy, the Employer shall construct a single seniority list for the employees covered by the Collective Bargaining Agreement. This list shall provide for preference to those Fisher employees whose seniority dates are on or before January 15, 1968, arranged according to their date of hire.

   (b) The remainder of the list will be made up of equal numbers of former Weissberger and former Fisher employees who shall be added to the list alternately, with the most senior Weissberger employee to follow directly on the list after those Fisher employees who qualify under (a) above.

*In re* Arbitration between Fisher & Bros., Inc. and Local 814, I.B.T. re: Seniority of employees with respect to former employees of Weissberger, Award of Arbitrator Knowlton (Dec. 14, 1977). In the opinion that accompanied the award, Arbitrator Knowlton summarized the facts and stated that "[t]he Employer's position is based on the present contract language [quoted earlier] which, in effect, it agreed to bypass in the original formula of February, 1973." *In re* Arbitration between Fisher & Bros., Inc. and Local 814, I.B.T. re: Seniority of employees with respect to former employees of Weissberger, Opinion of Arbitrator Knowlton, at 5 (Dec. 14, 1977). Although Arbitrator Knowlton agreed that Fisher "is entitled under the present circumstances to operate its business with one seniority list," *id.*, he found that the manner of creating such a list should reflect the intent of the letter agreements of 1973. As Arbitrator Knowlton explained:

I consider that the basis for the original [two list] formula lay in the fact that the employees of the purchaser, Fisher, would have been largely relegated to the lower end of a combined seniority list,

had one been developed in 1973. Such a list would have resulted in a preponderance of former Weissberger employees because of their greater seniority, at a time when they were largely unemployed because of Weissberger's poor business condition prior to the purchase, so that, in effect, a large proportion of the employees of the surviving organization would have been left bearing the brunt of the transaction.

With the decrease in business which has taken place since the purchase, a single list based on original seniority, if effected now, would have exactly the same effect. Further, it is to be noted that the Fisher purchase of Weissberger's *physical assets* does not fall squarely within the language of [the contract].

*Id.* at 6. In creating a single list, Arbitrator Knowlton concluded that the former Fisher employees were entitled to a preference over the former Weissberger employees because "the original date of hiring by either Weissberger or Fisher is of less importance than is the expectancy of stable employment by one or the other at the time of the purchase." *Id.* at 6–7. Drawing on other portions of the collective bargaining agreement, the arbitrator concluded that those pre-purchase Fisher employees who had been employed by the company for five years, at the time the letter agreements were executed, would be placed at the top of the seniority list with the balance of the list created by dovetailing the remaining 52nd Street list with the 22nd Street list.

Following the issuance of the arbitration award, certain of the plaintiffs requested that Local 814 commence legal proceedings to vacate the award, but the union declined to do so. On March 15, 1978, plaintiffs commenced this suit. The complaint alleges that Fisher violated the collective bargaining agreement; that Local 814 breached its duty of fair representation; and that the arbitrator exceeded his authority. The Court, however, confirms the arbitration award and denies plaintiffs all relief.

## DISCUSSION

### The Arbitration Award

■ Plaintiffs ask the Court to vacate the arbitration award and to declare that Fisher should create a single seniority list by date of original employment. Fisher cross-moves to confirm the award.

Plaintiffs claim that the arbitrator went beyond the submission and exceeded his authority. Thus, plaintiffs argue that the award should be vacated, *see* 9 U.S.C. § 10(d), citing Mr. Justice Douglas' oft-quoted statement in *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424. "[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice."

At the beginning of the arbitration hearing, the parties asked the arbitrator to decide whether the employer violated the collective bargaining agreement when it merged the lists and, if so, to prescribe a remedy. Plaintiffs argue that the arbitrator's opinion is irrational because his finding that Fisher is entitled to operate its business with one seniority list is inconsistent with his finding that Fisher violated the collective bargaining agreement by merging the lists. It appears to the Court, however, that the arbitrator found Fisher violated the collective bargaining agreement by the manner in which the single list was created. Moreover, in view of the conflict between the current collective bargaining agreement, the January 1973 agreements, and the actual conduct of the parties, in addition to the July 1977 agreement to arbitrate the seniority dispute, "[i]t is not apparent that [the arbitrator] went beyond the submission." *Enterprise Wheel, supra,* 363 U.S. at 598, 80 S.Ct. at 1361.

The thrust of plaintiffs' attack on the arbitration award is the claim that the aforementioned provision of the collective bargaining agreement was "clearly applicable" to the 1973 Fisher/Weissberger transaction and that the arbitrator "had no right to refuse to enforce its terms." Plaintiffs'

Memorandum of Law, at 22 (filed May 23, 1978). The arbitrator's opinion demonstrates that he found the contract provision, on which plaintiffs rely, inapplicable to Fisher's purchase of Weissberger's assets. Rather, it appears that the arbitrator attempted to ascertain the intent of the parties in creating the two-list system in 1973, and then applied that intent to the situation that existed in 1977. The Court's opinion on the merit of this interpretation is irrelevant. For even were the Court to conclude that such an interpretation of the agreements was "clearly erroneous," that conclusion would provide no basis to reverse the award. As the Second Circuit has instructed: "Whatever arbitrators' mistakes of law may be corrected, simple misinterpretations of contracts do not appear one of them." *I/S Stavborg v. National Metal Converters, Inc.,* 500 F.2d 424, 432 (2d Cir. 1974). Mr. Justice Douglas stated the reason for this rule as follows:

> [T]he question of interpretation of the collective bargaining agreement is a question for the arbitrator. It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his.

*Enterprise Wheel, supra,* 363 U.S. at 599, 80 S.Ct. at 1362.

Plaintiffs also claim that the following sentence from the arbitrator's opinion demonstrates he was not attempting to interpret the contract but rather, dispensing his own brand of industrial justice: "On this basis, the former Fisher employees are entitled to consideration to a greater extent than is provided in the 1973 arrangement." *Opinion of Arbitrator Knowlton, supra,* at 7. This sentence, however, can just as well be read as the arbitrator's interpretation of the intent of the draftsmen of the 1973 agreements as it would apply to a single seniority list. Moreover, "[a] mere ambiguity in the opinion accompanying an award, which permits the inference that the arbitrator may have exceeded his authority, is not a reason for refusing to enforce the

award." *Enterprise Wheel, supra,* 363 U.S. at 598, 80 S.Ct. at 1361. Accordingly, plaintiffs' motion to vacate the arbitration award is denied.

As to Fisher's cross-motion, to confirm the arbitration award,

> this much at least is certain: When arbitrators explain their conclusions . . . in terms that offer even a barely colorable justification for the outcome reached, confirmation of the award cannot be prevented by litigants who merely argue, however persuasively, for a different result.

*In re Andros Compania Maritima, S.A. v. Marc Rich & Co., A.G.,* 579 F.2d 691, 704 (2d Cir. 1978). Regarding the remedy awarded, arbitrators must be afforded the flexibility to deal with a wide variety of situations since the contract "draftsmen may never have thought of what specific remedy should be awarded to meet a particular contingency." *Enterprise Wheel, supra,* 363 U.S. at 597, 80 S.Ct. at 1361. Judging the instant opinion and award by these standards, the Court concludes that they exceed "a barely colorable justification for the outcome reached." *In re Andros Compania Maritima, S.A., supra,* at 704. Accordingly, Fisher's cross-motion to confirm the arbitration award is granted.

*Local 814's Duty of Fair Representation*

Plaintiffs and defendant Local 814 have cross-moved for summary judgment on those claims based on an alleged breach of the union's duty of fair representation. With the transcript of the arbitration hearing before the Court, there is no factual issue as to the manner in which plaintiffs were represented. Insofar as legal issues are involved, several Supreme Court opinions persuade the Court that plaintiffs cannot prevail.

The traditional starting point for fair representation analysis is the Supreme Court's statement of the law in *Vaca v. Sipes,* 386 U.S. 171, 190, 87 S.Ct. 903, 916, 17 L.Ed.2d 842 (1967):

> A breach of the statutory duty of fair representation occurs only when a union's

conduct toward a member of the collective bargaining unit is arbitrary, discriminatory, or in bad faith.

Two earlier opinions, cited by the Court in support of this statement, also bear on the instant case as both involved seniority disputes.

In *Ford Motor Co. v. Huffman*, 345 U.S. 330, 73 S.Ct. 681, 97 L.Ed. 1048 (1953), the Court affirmed the dismissal of a complaint against a union brought by a group of employees who claimed that their positions had "been lowered on the seniority roster . . . because of certain provisions in collective-bargaining agreements between Ford and the International Union . . .." *Id.* at 331, 73 S.Ct. at 683. The Court recognized that the union had broad authority to *negotiate* contract provisions dealing with seniority even though such conduct necessarily results in a relative disadvantage to some of the employees represented. As the Court explained:

> The bargaining representative, whoever it may be, is responsible to, and owes complete loyalty to, the interests of all whom it represents. . . . Inevitably differences arise in the manner and degree to which the terms of any negotiated agreement affect individual employees and classes of employees. The mere existence of such differences does not make them invalid. The complete satisfaction of all who are represented is hardly to be expected. A wide range of reasonableness must be allowed a statutory bargaining representative in serving the unit it represents, subject always to complete good faith and honesty of purpose in the exercise of its discretion.

*Id.* at 338, 73 S.Ct. at 686. Further, the Court noted that the National Labor Relations Act does not "compel a bargaining representative to limit seniority clauses solely to the relative lengths of employment of the respective employees." *Id.* at 342, 73 S.Ct. at 688.

*Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964), the other case cited in *Vaca*, presents a factual situation strikingly similar to that involved in the instant dispute. *Humphrey* concerned two trucking companies, Dealers Transport Company ["Dealers"] and E & L Transport Company ["E & L"], both engaged in transporting new automobiles from a Ford Motor Company plant in Louisville, Kentucky. Due to declining business, Ford advised both companies "that there was room for only one of them in the Louisville operation." *Id.* at 336, 84 S.Ct. at 365. Consequently, Dealers and E & L negotiated an agreement whereby E & L would leave Louisville.

The employees of both companies were represented by the same union and both companies were parties to collective bargaining agreements that contained identical provisions for arbitration of seniority "[i]n the event that the Employer absorbs the business of another private, contract or common carrier, or is a party to a merger of lines . . . ." *Id.* at 338, 84 S.Ct. at 366. Nonetheless, the union initially took the position that the E & L employees had no employment rights at Dealers. When the layoffs at E & L began, its employees, most of whom had greater seniority than the Dealers employees, filed a grievance claiming that the seniority lists of the two companies should be merged by date of original employment. By the time the grievance reached the labor-management committee for decision, the union had changed its position and aligned itself with the E & L employees against the Dealers employees. After a hearing, the conference committee decided that a single seniority list should be created by date of original employment.

Thereafter, the displaced Dealers employees brought suit. The Kentucky Court of Appeals enjoined implementation of the conference committee decision "since the situation involved antagonistic interests of two sets of employees represented by the same union advocate." *Id.* at 341, 84 S.Ct. at 367. In the opinion of the Kentucky court, the inadequate representation of the Dealers employees rendered the conference committee decision arbitrary and unenforceable. On certiorari, the Supreme Court reversed.

Initially, the claim that the union's change of position and its support of the E & L employees violated the duty of fair representation was rejected because the Court found that "the union took its position honestly, in good faith and without hostility or arbitrary discrimination." *Id.* at 350, 84 S.Ct. at 372. As to the claim that the Dealers employees were inadequately represented because of the nature of the dispute, the Court stated:

Dealers employees had notice of the hearing; they were obviously aware that they were locked in a struggle for jobs and seniority with the E & L drivers, and three stewards representing them went to the hearing at union expense and were given every opportunity to state their position. Thus the issue is in reality a narrow one. There was no substantial dispute about the facts concerning the nature of the transaction between the two companies. It was for the . . . Committee initially to decide whether there was an "absorption" within the meaning of [the collective bargaining agreement] and, if so, whether seniority lists were to be integrated and the older employees of E & L given jobs at Dealers. The Dealers employees made no request to continue the hearing until they could secure further representation and have not yet suggested what they could have added to the hearing by way of facts or theory if they had been differently represented. The trial court found it "idle speculation to assume that the result would have been different had the matter been differently presented." We agree.

*Id.* at 350–51, 84 S.Ct. at 372.

The *Humphrey* and *Huffman* decisions demonstrate certain considerations at play in the instant dispute. Another Supreme Court decision, *Hines v. Anchor Motor Freight, Inc.,* 424 U.S. 554, 96 S.Ct. 1048, 47 L.Ed.2d 231 (1976), discusses the legal and policy implications of an arbitration award. The precise issue before the Court in *Hines* was whether, despite an arbitration award in its favor, an employer could be liable for wrongfully discharging employees. The Court held that the employees, "if they prove an erroneous discharge and the Union's breach of duty tainting the decision . . ., are entitled to an appropriate remedy against the employer as well as the Union." *Id.* at 572, 96 S.Ct. at 1060. In the course of the Opinion the Court described the type of union conduct that would remove the finality ordinarily afforded arbitration awards. According to the Supreme Court, an arbitration award will lose its finality if the union representation was "dishonest, in bad faith, or discriminatory," *id.* at 571, 96 S.Ct. at 1059, or if the union's conduct caused the arbitral process to malfunction in some fundamental manner.

Plaintiffs herein, having received an unfavorable resolution of their seniority dispute in arbitration, now launch a collateral attack on the award claiming that their counsel was ineffective or biased. In view of the union's broad discretion in resolving seniority disputes and the finality to be accorded arbitration awards, mere allegations of procedural unfairness are not enough to upset the award. Rather, plaintiffs must come forward with the evidence or legal theory omitted from the arbitration hearing. Further, it must appear to the Court that the union's error or omission undermined the integrity of the agreed-upon procedure such that the taint can be removed only by vacating the award. Alternatively, plaintiffs must demonstrate that the union's conduct was so arbitrary or perfunctory as to be deemed irrational. *See Jones v. Trans World Airlines, Inc.,* 495 F.2d 790, 798 (2d Cir. 1974). Under this standard, plaintiffs' allegations of culpable conduct on the part of their union[1] are insufficient as a matter of law.

---

1. 1. "Local 814 . . . failed and refused despite repeated requests and demands to take any action to vacate the award of Arbitrator Knowlton." Complaint ¶ 41, at 9; Plaintiffs' Memorandum of Law, at 29 (filed May 23, 1978).

2. "Local 814 . . . failed to enforce the provisions . . . of the current collective bargaining agreement . . . ." Complaint ¶ 37, at 9; *see* Plaintiffs' Memorandum of Law, at 30-31 (filed May 23, 1978).

Initially, plaintiffs claim they are entitled to prevail solely because Local 814 refused to act to set aside the award. The Court disagrees.

The foregoing argument is simply another manifestation of plaintiffs' claim that the arbitrator's decision was erroneous. Plaintiffs' shrill insistence, that the only proper resolution of the Fisher seniority situation must conform to Article 21–H, is unduly myopic in view of their express agreement providing for two lists in 1973 and the maintenance of the two-list system for nearly five years thereafter. Furthermore, even if it could be said that the January 1973 agreements did not survive the execution of subsequent collective bargaining agreements, such legal error on the part of the arbitrator would not provide a basis to reverse the award. Having submitted the dispute to arbitration before an independent decisionmaker, the union was entitled, if not required, to abide by the award. Additionally, since the union represented the 52nd Street men as well as the plaintiffs, its failure to seek to vacate the award cannot be deemed irrational.

■ Plaintiffs next claim procedural unfairness because the union failed (1) to give them adequate notice of the hearings; (2) to meet with them to prepare the case; (3) to afford them the opportunity to cross-examine witnesses or to review exhibits offered in evidence; and (4) to inform them of their right to independent counsel. Putting aside the question whether such procedural safeguards are appropriate or desirable in an informal labor arbitration, the arguments fail because plaintiffs have not demonstrated "what they could have added to the hearing by way of facts or theory if they had been differently represented." *Humphrey v. Moore*, 375 U.S. 335, 350–51, 84 S.Ct. 363, 372, 11 L.Ed.2d 370 (1964). Although plaintiffs maintain that the union adduced insufficient evidence concerning the 1973 Fisher/Weissberger transaction, their own memorandum contains a detailed description of the deal taken entirely from the transcript of the arbitration hearings. *See* Plaintiffs' Memorandum of Law, at 21 n. * (filed May 23, 1978).

Finally, as evidence of Mr. Simon's bias, plaintiffs point to a statement he made at the end of the arbitration hearing that Article 21–H was not "dispositive of the matter at hand." Plaintiffs' Memorandum of Law, at 11 (filed June 21, 1978). The statement, however, was uttered in the context of Mr. Simon's closing argument on behalf of both employee groups wherein he also stated that each employee group "has a legitimate good faith reasonably based position; where the collective bargaining language is not dispositive of the matter at hand nor is the January 1973 agreement necessarily dispositive of the matter at hand . . . ." Following his remarks, Mr. Simon offered those employees present the opportunity to add anything they wished and each employee stated on the record he had nothing further to say. This evidence of "bias" is insufficient to reverse the arbitrator's award.

3. "Local 814 . . . failed to adequately and timely notify plaintiffs or their representatives of the dates scheduled for hearings before Arbitrator Knowlton." Complaint ¶ 38, at 9.

4. "Local 814 . . . failed to meet with plaintiffs or their representatives in advance of the proceedings before Arbitrator Knowlton in order to prepare for and fairly present plaintiffs' position." Complaint ¶ 39, at 9.

5. "Local 814 . . . failed to fully present the facts and circumstances surrounding the merger, purchase or acquisition of Weissberger and the subsequent post-merger operation of Fisher." Complaint ¶ 40, at 9.

6. " . . . Local 814 opposed plaintiffs' position [during the arbitration] that Article 21–H of the current collective bargaining agreement mandated a merged seniority list by date of earliest employment with either Fisher or Weissberger. . . . " Plaintiffs' Opposing 9(g) Statement ¶ 5, at 2 (filed June 21, 1978).

7. " . . . Local 814 failed to notify plaintiffs that they were entitled to separate counsel before Arbitrator Knowlton." Plaintiffs' Opposing 9(g) Statement ¶ 6, at 2 (filed June 21, 1978).

8. Local 814 failed "to afford plaintiffs' representatives opportunity to cross-examine witnesses, [failed] to show exhibits to the Weissberger representatives, and [submitted a] January 8, 1973 draft agreement into evidence" during the arbitration. Plaintiffs' Memorandum of Law, at 12 (filed June 21, 1978).

In this case Local 814 faced the task of representing the adverse interests of two sets of employees. Unable to resolve for itself which position should prevail, the union brought the matter to arbitration. Representatives of both groups stated their positions to the arbitrator while Mr. Simon adduced the pertinent facts. Upon review of the arbitration transcript, the Court concludes that plaintiffs can never prove that the union's conduct was arbitrary, discriminatory or in bad faith. *Cf. Holodnak v. Avco Corp.*, 381 F.Supp. 191, 199–200 (D.Conn.1974) (Lumbard, J., sitting by designation), *aff'd in part, rev'd in part*, 514 F.2d 385 (2d Cir. 1975). Accordingly, Local 814's motion for summary judgment is granted.

## CONCLUSION

The Court is not unmoved by the plight of the plaintiffs, some of whom have lost their jobs after twenty years in the industry. But the declining work opportunities at Fisher dictated that someone would suffer from any resolution of the seniority question. In this regard, plaintiffs, in a letter to Local 814 over three years ago, requested the following:

> All we want and all we ever wanted was to have [an] Arbitration Hearing with the Fisher Brothers Committee and the Weissberger Committee present, and let both parties be heard as to who is right and who is wrong on this matter of the integration [of the seniority lists] and to clear the air once and for all.
>
>     . . . We know that since we are all members of Local 814, the Union has to stay neutral.

Plaintiffs now have the judgment of the arbitrator that they bargained for; their claim that the arbitrator's decision is wrong provides no legal basis for the Court to interfere.

For the foregoing reasons, the motions, by defendant Fisher to confirm the arbitration award and by Local 814 for summary judgment, are granted. The complaint is dismissed.

Local 814 is directed to submit a judgment, on notice, in accordance with this Opinion, each party to bear his own costs.

The foregoing are the Court's findings of fact and conclusions of law. Fed.R.Civ.P. 52(a).

SO ORDERED.