INTERNATIONAL ASSOCIATION OF MACHINISTS AND AEROSPACE WORKERS, AFL–CIO DISTRICT LODGE 201, et al., Plaintiffs,

v.

DAVID MANUFACTURING COMPANY, Defendant.

No. 2C 83–3120.

United States District Court, N.D. Iowa, C.D.

Oct. 2, 1985.

Mark S. Soldat, Algona, Iowa, for plaintiffs.

Ted Enabnit, Mason City, Iowa, for defendant.

FINDINGS OF FACT, CONCLUSIONS OF LAW AND JUDGMENT

DONALD E. O'BRIEN, Chief Judge.

This matter comes before the Court on the parties' pleadings and after trial to the Court in Fort Dodge, Iowa on June 18, 1985. Plaintiff's complaint prays for an order vacating or modifying the arbitration award entered by Arbitrator Sinicropi on July 27, 1983 upholding the defendant's no fault absenteeism policy, which the plaintiffs allege violates their collective bargaining agreement (CBA). Plaintiffs contend that defendant's adoption and application of the no fault absenteeism policy violates the discipline for just cause clause of the CBA.

Following a hearing on motions for judgment on the pleadings submitted by both parties, this Court entered an order on May 18, 1984, granting defendant's motion and dismissing the action. Plaintiffs then filed a motion to alter or amend the judgment, which was resisted. After a hearing on October 26, 1984, this Court modified its previous order and denied defendant's motion for judgment on the pleadings and reinstated the matter for trial to determine whether or not the record made before the arbitrator was sufficient to support the arbitrator's conclusions. The matter was tried to the Court on June 18, 1985, where exhibits and testimony of witnesses was received and arguments of counsel were heard. The Court now makes the following findings of fact and conclusions of law with respect thereto.

## FINDINGS OF FACT

International Association of Machinists and Aerospace Workers, AFL–CIO, Local Lodge No. 2645 ("Union") is a labor organization which has had a CBA with David Manufacturing Company ("Company") since at least March 13, 1981. Article XIV of this CBA provides a method of adjusting grievances between the parties. Under this article the parties are required to pursue four steps, the last of which is arbitration. The arbitrator's ruling is "final and binding".

The term "grievance" includes "disputes concerning the existence of just cause for discharge or discipline ...". Under Article X the company has "the right to discipline and/or discharge [only] for just cause ...". On May 11, 1981, the company did establish a disciplinary policy governing absenteeism. On February 2, 1983, the company enforced this disciplinary policy against three employees. The Union pursued the Article XIV grievance procedure through step 4, a hearing having been held before Arbitrator Anthony K. Sinicropi on June 29, 1983. This Court adopts the additional findings of fact set out in the arbitrator's decision as follows.

The facts in this case are not disputed. On February 2, 1983 the grievants, who worked on a day shift 7:00 a.m. to 5:30 p.m., left work early because of a seven-inch snowfall and, as a result, they were charged with two and three-quarters hours of unexcused time under the absence policy. The grievants were members of a car pool and, because of what they considered to be unsafe driving conditions and because they lived some twelve miles from the plant, they asked to be excused early. While they were not denied the right to leave early, the company did count the time they missed work by reason of their early departure as unexcused time. It is this time which is being contested.

The weather conditions indeed were adverse, but the parties disagree that at the time of the grievants' departure that road conditions were so critical so as to require early departure from work. The company closed the plant at 4:00 p.m. and sent all employees home. Other employees who left early were also charged with unexcused time, but they did not grieve. The unexcused time charged against the grievants began at approximately 1:10 p.m. when they left work and they were charged for the time missed from 1:10 p.m. until 4:00 p.m.—the time when the plant closed.

## CONCLUSIONS OF LAW

The Court is aware of its limitations when reviewing an arbitration award. "It is not the function of a reviewing court to look at the merits of the claim," *Vulcan-Hart Corp. v. Stove, Furnace and Allied Appliance Workers Local 110*, 671 F.2d 1182, 1184 (8th Cir.1982). The Court does not engage in *de novo* review of the merits of the arbitration award, *United Steel Workers of America v. Mueller Brass Co.*, 479 F.Supp. 413, 416 (N.D.Miss.1979); indeed, the arbitrator's ruling is final and binding as long as he considered and decided only the particular issues presented. *See* Section II, § 14.2, Joint Exhibit A.

If the question is one which was properly submitted to arbitration and if the award draws its essence from the CBA, the

court may not review the merits or refuse to enforce the award. *Zeviar v. Local 2427, Airline, Aerospace and Allied Employees,* 733 F.2d 556, 559 (8th Cir.1984). Thus, once an issue is properly before the arbitrator, the party seeking to vacate the award must meet a heavy burden.

■ However, the arbitrator is not without limits, either. He is confined to interpretation and application of collective bargaining agreements and does not sit to dispense his own brand of justice. Yet, arbitrators must be afforded flexibility to decide a wide variety of situations since the contract's draftsman may never have thought of what specific remedy should be afforded to meet particular contingencies. *Crusco v. Fisher,* 458 F.Supp. 413, 419 (S.D.N.Y.1978).

The arbitrator in the instant case was called upon to resolve a dispute involving a clause in the CBA granting the employer the right to establish and enforce reasonable rules of conduct and a clause indicating that discipline must be for just cause. These clauses are contained in Article X of the CBA. The plaintiffs had challenged the company's initiation of a new absenteeism policy contending that the policy was in violation of Article X and that it imposed discipline without "just cause". The arbitrator found that the new, no fault policy was a reasonable exercise of the company's management rights and that the policy was within the company's right to establish reasonable rules of conduct and further found that the policy had been applied in a fair and consistent manner.

■ It is the arbitrator's obligation to resolve any conflicts in contract construction and interpretation: Such a decision will not be interfered with "unless it can be said with positive assurance that the contract is not susceptible to the arbitrator's interpretation." *Vulcan-Hart Corp. v. Stone, Furnace and Allied Appliance Workers Local 110,* 671 F.2d 1182, 1184 (8th Cir.1982). After reading the arbitrator's decision, the Court is convinced that the arbitrator implicitly decided that a violation of a reasonable no fault absence policy was "just cause" for discharge. Furthermore, the Court concludes that the arbitrator was within the scope of his authority when he made this determination.

■ However, the above conclusion does not serve to dispose of this matter. Plaintiffs contend that there were no facts in the record before the arbitrator from which he could logically conclude that the company consistently applied the no fault absenteeism policy. Thus, should this Court examine the record and determine that no factual support exists to support the arbitrator's determinations, his award must be vacated. *Storer Broadcasting Co. v. American Federation of Television and Radio Artists,* 600 F.2d 45, 47 (6th Cir. 1979).

In this Court's order of December 24, 1984, the Company's motion for judgment on the pleadings was denied because there remained factual disputes as to whether there was any record support for the arbitrator's decision that the company's policy was consistently applied. As there was no transcript available from the proceedings before Arbitrator Sinicropi, the Court heard testimony which was confined to the evidence presented to the arbitrator.

The Union attempted to show from the testimony of Employee Robert Bonner that the Company was unreasonable and inconsistent in its application of the absenteeism policy. Mr. Bonner stated that on the day of the snow storm, he informed the Company that he would not be able to come to work and yet he was never given counted time. However, no time sheets or other records were produced to corroborate the statement, and Mr. Bonner himself indicated on cross-examination that he never checked his records. Therefore, the Court is not inclined to view Robert Bonner's testimony as evidence that the policy was inconsistently enforced.

Indeed, while it may not have decided the grievance in the same manner, the Court is convinced from the evidence at trial that there was sufficient support in the record for the arbitrator's decision that the Com-

pany's policy was reasonable as adopted and as applied.

IT IS THEREFORE ORDERED that the decision of Arbitrator Sinicropi is hereby upheld.